IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MCCAP HOLDINGS 1, LLC,
    *Plaintiff*,

v.

STONEWALL CAPITAL, LLC,
    *Defendant*.

Case No. 24-cv-2155-ABA

**MEMORANDUM OPINION**

On June 13, 2023, Plaintiff MCCAP Holdings 1, LLC ("MCCAP") and Defendant Stonewall Capital, LLC ("Stonewall") entered into an agreement under which MCCAP agreed to terminate a real property transaction in exchange for Stonewall paying MCCAP $500,000 by June 1, 2024. Stonewall failed to timely remit payment. MCCAP asserts that Stonewall also agreed to pay a late fee and collection expenses, such as attorneys' fees. Stonewall does not dispute that there was an enforceable agreement but contends that it is only required to pay the $500,000 rather than any additional fees. MCCAP has moved for summary judgment. For the reasons that follow, MCCAP's motion will be granted.

**I.    BACKGROUND**[1]

On or about May 9, 2022, MCCAP entered into an Agreement of Sale with North East Enterprises LLC and Butler Lake LLC to purchase two parcels of real property in

---

[1] Upon consideration of a motion for summary judgment, the Court must consider the facts in the light most favorable to the nonmoving party, Stonewall. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

1

Cecil County, Maryland (the "Purchase Agreement"). ECF No. 1 at 1–2, ¶ 8; ECF No. 7 ¶ 8; ECF No. 18-2 at 3 (Page 8 Lines 5–10). On or about June 2, 2022, MCCAP and Stonewall entered into an Assignment of Agreement of Sale, assigning the rights under the Purchase Agreement to Stonewall; that agreement was amended twice, on June 13 and August 25, 2022. ECF No. 1 ¶ 9; ECF No. 7 ¶ 9. On or about June 13, 2023, MCCAP and Stonewall entered into a Termination of Assignment of Agreement of Sale (the "Termination Agreement") to terminate the June 2, June 13, and August 25 agreements. ECF No. 1 ¶ 10; ECF No. 7 ¶ 10.

The Termination Agreement required MCCAP to terminate the Purchase Agreement, which it did promptly after the execution of the Termination Agreement. ECF No. 1 ¶¶ 11, 13; ECF No. 1-1 § 3; ECF No. 7 ¶¶ 11, 13. As consideration for the termination, Stonewall agreed to pay MCCAP a termination fee of $500,000 by June 1, 2024 (the "Termination Fee"). ECF No. 1-1 § 4. To date, Stonewall has failed to make this payment. ECF No. 1 ¶ 26; ECF No. 7 ¶ 26; ECF No. 20 at 2.

Section 4 of the Termination Agreement states, "as evidence of such obligation to pay the Termination Fee, simultaneously with the execution of this Termination Agreement, Assignee [Stonewall] shall deliver an Unsecured Promissory Note to Assignee in such form as attached hereto as Exhibit 'A'." ECF No. 1-1 § 4. The Unsecured Promissory Note (the "Promissory Note") attached to the Termination Agreement states that, should Stonewall fail to timely pay the $500,000, it must also pay "a 'late charge' equal to 5% of the amount of that payment," as well as "all collection expenses, if any, including reasonable attorney's fees and court costs, incurred in the collection or enforcement of all or any part of this Note." *Id*. at 5. Stonewall has made no payments,

including towards the "late charge" or collection expenses. ECF No. 1 ¶ 26; ECF No. 7 ¶ 26.

MCCAP filed the present suit against Stonewall asserting 2 claims: breach of contract (Count 1) and fraudulent inducement (Count 2). ECF No. 1. MCCAP has filed a motion for summary judgment on Count 1 only. ECF No. 18.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and when the nonmovant bears "the burden of proof at trial." *Celotox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with "sufficient evidence . . . for a jury to return a verdict for that party," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotox*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Matsushita*, 475 U.S. at 587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party (here, Defendant Stonewall). *Matsushita*, 475 U.S. at 587–88.

## III.  DISCUSSION

### A.  The undisputed evidence establishes that MCCAP is entitled to receive the Termination Fee

MCCAP argues, and Stonewall does not dispute, that MCCAP is entitled to receive the $500,000 Termination Fee provided under the Termination Agreement. ECF No. 18-1 at 9; ECF No. 20 at 4. Stonewall specifically "concedes that: (1) the Termination Agreement constitutes a valid and enforceable contract obligating Stonewall to pay Plaintiff a $500,000 Termination Fee; (2) Stonewall did not remit payment of the Termination Fee by the June 1, 2024, deadline, thereby constituting a breach of contract; and (3) Stonewall remains liable for the full amount of the Termination Fee." ECF No. 20 at 4. Therefore, the undisputed evidence establishes that Stonewall is liable to MCCAP for $500,000.

### B.  The undisputed evidence also establishes MCCAP is entitled to the Late Fees and Attorneys' Fees

Under Maryland law, which the parties agreed would govern the Termination Agreement, ECF No. 1-1 at 2, multiple documents may be read together as a part of a contract even if "only one writing is signed" if "(1) the signed writing is physically annexed to the other writing by the party to be charged, or (2) the signed writing refers to the unsigned writing, or (3) it appears from examination of all the writings that the signed writing was signed with reference to the unsigned writings." *Sinclair v. Weber*, 204 Md. 324, 332 (1954) (citing Restatement (First) of Contracts § 208 (A.L.I. 1932)); *see also, e.g.*, *Lyles v. Santander Consumer USA Inc.*, 263 Md. App. 583, 610 (2024) (explaining that multiple documents "can be construed together to constitute the entire agreement if the language of the documents indicate that intention").

4

MCCAP argues that the Promissory Note unambiguously requires Stonewall to pay, in addition to the Termination Fee, a late fee equal to 5% of the $500,000 (which is $25,000) and any collection expenses (including reasonable attorneys' fees). ECF No. 18-1 at 9–10. MCCAP argues that, although Stonewall did not sign the Promissory Note, it did sign the Termination Agreement, and the Promissory Note meets all three factors from *Sinclair* such that it should be read together with the Termination Agreement. ECF No. 21 at 4. MCCAP also notes that Stonewall's managing member conceded that Stonewall "agreed" to the Promissory Note and "inten[ded] to be bound by the Promissory Note." *Id.* (citing ECF No. 18-2 at 11 (Page 38, Line 3–6)). Stonewall argues that it does not have any obligations under the Promissory Note because Stonewall did not separately sign it and further argues that the Termination Agreement does not incorporate the Promissory Note and does not itself impose any additional financial penalties beyond the Termination Fee. ECF No. 20 at 4.

The undisputed evidence establishes that Stonewall did agree to be bound by the terms set forth in the Promissory Note, including the obligation to pay the $25,000 late fee and reasonable attorneys' fees. It is undisputed that Stonewall signed the Termination Agreement but not the Promissory Note. ECF No. 18-1 at 9–10; ECF No. 20 at 4. But the Promissory Note meets each of the three *Sinclair* factors: (1) the Promissory Note was annexed to the Termination Agreement as Exhibit A, (2) section 4 of the Termination Agreement explicitly references the Promissory Note and requires that Stonewall deliver it simultaneously with the execution of the Termination Agreement, and (3) the Termination Agreement and Promissory Note relate to the same transaction with an objective intent for them to be read together. *See Sinclair*, 204 Md. at 332. It is also undisputed that Stonewall's attorney circulated the Promissory Note

along with the signed Termination Agreement. ECF No. 18-1 at 10. To the extent any ambiguity exists, as noted above Stonewall's representative and managing member, who signed the Termination Agreement, stated in his deposition that he intended to be bound by the terms in the Promissory Note. ECF No. 18-2 at 11 (Page 38, Line 3–6). Therefore, the Court concludes that Stonewall is bound by both the Termination Agreement and Promissory Note.

The Promissory Note clearly provides for a "late charge" of 5% of the outstanding payment (here, $500,000), which equals $25,000. Therefore, Plaintiff is entitled to $25,000 in late fees.

The Promissory Note also expressly requires Stonewall "to pay all collection expenses, if any, including reasonable attorney's fees and court costs, incurred in the collection or enforcement of all or any part of this Note." ECF No. 1-1 at 5. Stonewall's primary counterargument, should the Court determine that the Promissory Note is enforceable against it, is that MCCAP's demand for attorneys' fees is "unsupported and patently unreasonable." ECF No. 20 at 6–7. This, however, goes to the amount of the attorneys' fees rather than whether Stonewall is obligated to pay reasonable attorneys' fees. And MCCAP does not request that the Court determine the amount of reasonable attorneys' fees at this point, but rather will substantiate its request in "post-judgment proceedings." ECF No. 18-1 at 12. Stonewall contends that the fees MCCAP has reported to Stonewall (65.6 hours totaling $45,018 as of October 8, 2024) are excessive. ECF No. 20 at 6. The Court does not decide at this time what amount is reasonable and appropriate. The order accompanying this opinion will require MCCAP to file a motion for fees and justify the hours and rates comprising its fee request.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment on Count 1 (ECF No. 18) will be GRANTED. A separate order follows.


Date:  October 21, 2025                                      /s/
                                                    _____
                                              Adam B. Abelson
                                              United States District Judge